Louis T. Di Lorenzo, Appellant, v Hugh Carey, as Governor of the State of New York, et al., Respondents. (Appeal No. 1.)

James A. Farrell, Appellant, v Hugh Carey, as Governor of the State of New York, et al., Respondents. (Appeal No. 2.)

Fourth Department, May 26, 1978

## APPEARANCES OF COUNSEL

*Joan de R. O'Byrne (Matthew Finkin* of counsel), for Louis T. Di Lorenzo, appellant.

*Harris, Maloney, Horwitz & Evans (Richard Evans* of counsel), for James A. Farrell, appellant.

*Louis J. Lefkowitz, Attorney-General (Paul Harrison* and *Ruth Kessler Toch* of counsel), for respondents.

*Matthew W. Finkin* for American Association of University Professors, *amicus curiae.*

## OPINION OF THE COURT

MARSH, P. J.

Petitioner James A. Farrell appeals from an order and judgment which granted defendants' motion to dismiss the petition and vacate a temporary restraining order. Plaintiff Louis T. Di Lorenzo appeals from a judgment which declared that any relief to which plaintiff was entitled could be obtained solely within the procedures established by the collective bargaining agreement between United Universities Professors, Inc. and the State University of New York.

In his petition petitioner Farrell asserts that his first appointment with State University College at Brockport was as a counsellor with the campus school on September 1, 1965 for a two-year period. On September 12, 1967 he obtained a continuing appointment as associate professor. On October 30, 1970, he was transferred to the Department of Educational Research by defendant Albert W. Brown, President of the State University College at Brockport. In a letter from President Brown dated January 26, 1976 petitioner was notified that due to reductions in the operating budget of the State College at Brockport, his continuing appointment would be terminated effective February 29, 1976 and that the termination of the appointment constituted retrenchment. The petition alleged that eight persons were retrenched under the budget cutting at Brockport State College, five noninstructional personnel such as maintenance men and three academic personnel. It alleged that the Department of Educational Research must have been declared a retrenchment unit. No hearing was accorded petitioner prior to the termination notice. President Brown failed to consult with the faculty senate of Brockport prior to retrenchment in order to estab-

lish the procedures and criteria with which to guide the retrenchment. In addition, President Brown did not first terminate in the Department of Educational Research untenured faculty members and two assistant professors before reaching petitioner, an associate professor, as required by the collective bargaining agreement. On March 11, 1976 petitioner filed a grievance under the collective bargaining agreement concerning his termination. The petition seeks an administrative or judicial hearing to determine the validity of petitioner's termination of his tenured position as an associate professor in the Department of Educational Research.

Plaintiff Louis T. Di Lorenzo asserts in his first cause of action that he obtained a term appointment as professor in the Department of Educational Research on May 20, 1970. He was granted a continuing appointment at the professorial level on November 10, 1972. He received a letter identical in form to that sent to petitioner Farrell notifying him that his continuing appointment as professor in the Educational Research Department would be terminated effective on February 29, 1976. On March 10, 1976 plaintiff filed a grievance with respect to the termination under the collective bargaining agreement. In his first cause of action plaintiff alleges that the Chancellor of the State University of New York failed to seek the advice of the faculty senate concerning the policy to be followed in retrenchment as required by the policy articles of the State University Trustees. He asserts the right to a hearing to determine the criteria for selecting the educational unit to be retrenched and the manner in which retrenchment would be accomplished within the chosen unit. The second cause of action refers to the collective bargaining agreement guidelines for retrenchment and a failure to follow them constituting a breach of the collective bargaining agreement.

The collective bargaining agreement between the State University of New York and the United University Professors, Inc. (UUP) in effect for years 1974 through 1976 provides for a three-step grievance procedure culminating in binding arbitration. Article 7 of the collective bargaining agreement provides, *inter alia:*

"*Grievance Procedure*

"§ 7.1 Purpose

"The purpose of this Article is to provide a prompt and efficient procedure for the investigation and resolution of grievances. The orderly process hereinafter set forth shall be

the sole method for the resolution of grievances. The State, UUP and employees shall endeavor initially to resolve grievances informally when feasible.

"§ 7.2 Definition

"a. A grievance is a dispute concerning the interpretation, application or claimed violation of a specific term or provisions of this Agreement.

"b. The term grievance shall also be deemed to mean a claimed failure by the State to follow the procedural steps provided by Articles of the Policies relating to appointment and promotion of academic employees or relating to appointment, promotion or evaluation of professional employees (hereinafter referred to as 'Policy Articles').

"c. A claim of improper or unjust discipline shall be processed in accordance with Article 19, Discipline, of this Agreement and shall not be subject to the grievance procedure contained in this Article."

The gravamen of Farrell's petition and Di Lorenzo's complaint concerns the termination of their positions with the State University College at Brockport, allegedly due to budgetary restraints (retrenchment). Both parties are members of a negotiating unit covered by the collective bargaining agreement and have, in fact, submitted grievances pursuant to the grievance procedures of that agreement. The collective bargaining agreement provides for terminating an academic employee's position with the State University of New York and its constituent units when retrenchment for budgetary or organizational reasons is sought to be accomplished by the university administration. Article 35 of the collective bargaining agreement provides with respect to retrenchment:

"Retrenchment

"§ 35.1 Retrenchment shall be defined as the termination of the employment of any academic or professional employee during any appointment, other than a temporary appointment which may be terminated at any time, as a result of financial exigency, reallocation of resources, reorganization of degree or curriculum offerings or requirements, reorganization of academic or administrative structures, programs or functions or curtailment of one or more programs or functions University-wide or at such level of organization of the University as a campus, department, unit, program or such other level of

organization of the University as the Chancellor or his designee deems appropriate.

"§ 35.2 Consistent with the mission of the level of organization of the University at which retrenchment occurs, the Chancellor or his designee, after such consultation as may, in his judgment, be appropriate, shall apply retrenchment among employees holding the same or similar positions subject to retrenchment at such level of organization in inverse order of appointment within each affected group of employees hereinafter referred to, as follows:

"a. Part-time employees before full-time employees.

"b. Full-time academic employees holding term appointments before those holding continuing appointments.

"c. Full-time professional employees holding term appointments before those holding permanent appointments.

"§ 35.3 The State will notify the persons affected by retrenchment as soon as practicable recognizing that, where circumstances permit, it is desirable to provide the following notice of termination:

"a. For those holding a term appointment, at least four months.

"b. For those holding a continuing or permanent appointment, at least one semester.

"§ 35.4 At the time of retrenchment the University shall give special consideration for placement within the University to an employee whose services might be terminated as a result of retrenchment, provided that a suitable position for which the employee is otherwise qualified is available.

"§ 35.5 For a period of two years following retrenchment, an employee removed as a result of retrenchment who is not otherwise employed in the University shall be offered reemployment in the same or similar position at the campus at which he was employed at the time of retrenchment should an opportunity for such reemployment arise. Any offer of reemployment pursuant to this Section must be accepted within 15 days after the date of the offer, such acceptance to take effect not later than the beginning of the semester immediately following the date the offer was made. In the event such offer of reemployment is not accepted, the employee shall receive no further consideration pursuant to this Section. In the event such offer of reemployment is accepted, the employee, upon commencement of such reemployment, shall receive the fol-

lowing benefits to the extent permitted by applicable law, rule or regulation:

"a. Seniority for purposes of retrenchment. The employee shall receive the same seniority for purposes of retrenchment as he held on the date of his termination by reason of retrenchment.

"b. Appointments. An academic employee who held a continuing appointment on the date of his termination by reason of retrenchment shall resume his continuing appointment. A professional employee who held a permanent appointment on the date of his termination by reason of retrenchment and who is reemployed in the same position shall resume his permanent appointment, otherwise he shall be given a term appointment.

"c. Prior service credit. An employee who held a term appointment on the date of his termination by reason of retrenchment or who held a permanent appointment but is not reemployed in the same position held prior to termination by reason of retrenchment shall be granted a new term appointment and shall be credited with all prior continuous service up to a maximum of four years for purposes of eligibility for permanent or continuing appointment.

"d. Sick Leave. An employee shall be credited with the sick leave accruals which he had on the date of his termination by reason of retrenchment."

President Brown asserted in his termination notices to appellants that he was exercising his authority pursuant to the retrenchment provisions of the collective bargaining agreement. Appellants have agreed to be bound by the collective bargaining agreement by their membership in the negotiating unit, irrespective of whether they personally supported the contract when approved. Whatever other rights they might have had of a procedural or constitutional nature, are deemed waived (*Antinore v State of New York*, 49 AD2d 6, affd 40 NY2d 921). The appellants fail to take into account that they have agreed to grant the State University of New York the right to terminate their services without a hearing upon a claimed retrenchment other than that provided by the agreement's grievance procedures and binding arbitration. They do not attack the collective bargaining process itself as a violation of constitutional due process (see *Mount St. Mary's Hosp. of Niagara Falls v Catherwood*, 26 NY2d 493). The United States Supreme Court cases cited by appellants have

no application to termination procedures covered by collective bargaining agreements (see *Board of Regents of State Colls. v Roth,* 408 US 564; *Perry v Sindermann,* 408 US 593). Indeed, this method of resolving labor disputes within the framework of a collective bargaining agreement is most favored by Federal *(Steelworkers v Warrior & Gulf Co.,* 363 US 574) and State policy *(Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington v Associated Teachers of Huntington,* 30 NY2d 122). Thus appellants' argument is reduced to the proposition that their constitutional due process rights are violated by reason of the fact that the agreement to which they gave assent fails to provide a type of hearing at which they may raise issues of policy over which jurisdiction appears to be reserved by the collective bargaining agreement exclusively to the State University of New York (cf. *Matter of Gupta v Boyer,* 55 AD2d 1024).

A final point raised by appellants concerns the applicability of 8 NYCRR 338.14: "Budget or Program Curtailment. The services of any members of the academic staff may be terminated in the event of financial or program retrenchment. If the chancellor anticipates that such retrenchment may be necessary, he shall seek the advice of the faculty senate concerning the policy to be followed in the reduction of staff."

The policies of the board of trustees of the State University of New York contained in subchapter B of chapter 5, of which the above regulation is a part, have only a limited application when a collective bargaining agreement enacted pursuant to article 14 of the Civil Service Law is in effect with respect to a particular negotiating unit within the State University system.

"343.1 Applicability. The provisions of the policies of the board of trustees, insofar as they apply to employees in negotiating units established pursuant to article 14 of the Civil Service Law, shall be continued, provided, however, that during periods of time where there is in effect an agreement between the State and an employee organization reached pursuant to the provisions of said article 14, the provisions of such agreement and the provisions of said policies shall both be applicable. In the event the provisions of the agreement are different from the provisions of said policies, the provisions of the agreement shall be controlling." (8 NYCRR 343.1.)

A close analysis of these two provisions leads to the conclusion that the collective bargaining agreement and par-

ticularly its detailed procedure with respect to retrenchment, should control in light of section 343.1 of title 8 of the Official Compilation of Codes, Rules and Regulations of the State of New York. Section 338.14 has as its objective the formulation of policies which could very well overlap and conflict with the detailed manner of handling retrenchment spelled out in the collective bargaining agreement. Where the approaches to this problem differ, the collective bargaining agreement should control. This is the position taken by the concurring opinion of Justice TITONE in *Hedley v State of Univ. of N. Y.* (54 AD2d 891, affd after remand 58 AD2d 576, affd upon another point 43 NY2d 698). The issues arising from appellants' retrenchment are exclusively governed by the collective bargaining agreement, hence the grievance procedure provided for in the agreement and if demanded, binding arbitration, provide the sole means of resolving them.

It would appear that the proper procedural vehicle for reviewing the termination of plaintiff Di Lorenzo's tenure as a professor in the Department of Educational Research is a proceeding under CPLR article 78 to review in the nature of mandamus and not a declaration of his rights under the collective bargaining agreement, statutes, regulations and the constitution. He does not seek as his primary object a declaration of his rights, but rather a review of the legality of his termination by the administrative authorities responsible therefor. This is clearly within the purview of an article 78 proceeding to review. However, since the necessary parties are before the court, we convert the declaratory judgment action to an article 78 proceeding, which we may do pursuant to CPLR 103 (subd [c]).

The order and judgment in the proceeding brought by the petitioner Farrell should be affirmed and the judgment in the action brought by plaintiff Di Lorenzo modified by deleting the provision declaring the rights of the parties and by dismissing the complaint, and otherwise affirmed.

DILLON, HANCOCK, JR., DENMAN and WITMER, JJ., concur.

Appeal No. 1.—Judgment unanimously modified in accordance with opinion by MARSH, P. J., and as modified, affirmed without costs.

Appeal No. 2.—Order and judgment unanimously affirmed, without costs.